UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

LORENZO GARCIA,                    )
                                   )
          Petitioner,              )    CIVIL ACTION NO.
                                   )    08-40017-DPW
v.                                 )
                                   )
S. SPAULDING[1],                   )
Warden, FMC Devens,                )
                                   )
          Respondent.              )
                                   )

MEMORANDUM AND ORDER
July 24, 2018

     Lorenzo Garcia presents this amended petition for a writ of
habeas corpus seeking conditional release from his civil
commitment at FMC Devens and placement in a non-penal setting.
He completed his federal criminal sentence in 2003, but has
remained civilly committed in federal prison medical centers
since that time.  In 1991, Mr. Garcia's underlying criminal
conviction was imposed in the District of Arizona.  In 2003, his
civil commitment was ordered in the Western District of
Missouri.  Since 2004 he has been at FMC Devens within the
District of Massachusetts.  In addition to substantive questions
regarding the appropriateness of his confinement, his petition

---

[1] The current warden at FMC Devens is now apparently S.
Spaulding.  Accordingly, pursuant to Fed. R. Civ. P. 25(d), the
current warden is substituted by name as the Respondent in this
action.

raises complicated issues of jurisdiction generally and the scope of this court's habeas corpus authority under 28 U.S.C. § 2241 in particular.

## I. BACKGROUND

### A.   *Procedural History*

Mr. Garcia initiated this action by filing a *pro se* petition for writ of habeas corpus on January 28, 2008.  The case was originally assigned to Judge Gertner but upon her retirement the case was reassigned to me.  After that reassignment, given the complex jurisdictional issues, I relieved previously appointed counsel — who acknowledged less than complete familiarity with the full dimension of the legal questions presented — and appointed Attorney Jeanne Kempthorne pursuant to the Criminal Justice Act habeas corpus rubric.

Through Ms. Kempthorne, Mr. Garcia filed an Amended Petition for writ of habeas corpus.  Respondent opposed the petition and moved to dismiss or for a change of venue. Reserving on those motions, I held a bench trial to develop the underlying facts about Mr. Garcia's commitment in order to resolve the jurisdictional issues and advance substantive resolution of the case while the question of jurisdiction

remained pending.  Meanwhile, Ms. Kempthorne sought to find ways to secure alternative placements for Mr. Garcia but none proved feasible.

As a result of my Findings of Fact in Section I.B. and my Conclusions of Law in Section II, I have determined this case is properly pursued in this court under 28 U.S.C. § 2241.  Ms. Kempthorne, however, has now withdrawn from the active practice of law generally and, in particular, successfully moved to withdraw as counsel here for Mr. Garcia.  I will use this Memorandum and Order resolving the outstanding motions to provide background for counsel to be appointed to succeed Ms. Kempthorne.

**B.   *Findings of Fact***

In accordance with Fed. R. Civ. P. 52, I find the underlying facts as follows.

In 1991, a jury in the District of Arizona convicted Mr. Garcia of the aggravated sexual assault of his niece, who was under the age of 13.  Judge Rosenblatt imposed a sentence of 96 months for the offense.  Mr. Garcia was released in February 1998, but six months later, his supervised release was revoked for sleeping at the home of his victim in violation of a court

3

order to stay away.  Judge Rosenblatt imposed a sentence of 60 months in prison for the violation.

Before Mr. Garcia had served the entirety of the revocation sentence, the government petitioned that he be civilly committed.  Mr. Garcia has borderline intellectual functioning and began to exhibit persistent psychotic symptoms around 1995 during his first period of incarceration.  During his second period of incarceration, he began to express paranoid delusions that a government conspiracy caused his incarceration and that government officials or mafia-like figures had killed his family, although, in fact, his family is still alive and living in Arizona.  He also talked about and attempted suicide on several occasions.  Eventually, he was diagnosed with schizophrenia.

While Mr. Garcia was lodged at the Federal Medical Center in Springfield, Missouri in 2002, he was ordered civilly committed by Judge Dorr of the United States District Court for the Western District of Missouri under 18 U.S.C. § 4245, as a prisoner suffering from mental illness.  Then, before Mr. Garcia's scheduled release from his criminal sentence, Judge Dorr ordered him, in 2003, to remain civilly committed pursuant

to 18 U.S.C. § 4246, as a person otherwise eligible for release, but posing a threat to his own safety or the safety of others as a result of his mental illness.  In May 2004, Mr. Garcia was transferred to FMC Devens in Massachusetts, where he remains today.

FMC Devens is a federal medical facility that primarily houses individuals serving federally-imposed criminal sentences who require substantial medical care.  It also houses approximately 60 civilly committed patients, including Mr. Garcia.  Mr. Garcia is housed in the Mental Health Unit known as the N-Building.  At its most restrictive, the Mental Health Unit can lock prisoners and patients in individual cells for approximately 23 hours per day.  At its least restrictive, the Mental Health Unit allows individuals full daytime access to the prison compound including TV, the library, movies, religious services, and outdoor recreation as well as treatment options including recreation therapy and sex offender treatment.  FMC Devens requires patients who are civilly committed to wear prison-issue clothing, subjects them to the prison curfew, and includes them in the same mandatory counts and random cell searches as general population inmates.  Devens also employs a

full-time staff of mental health professionals including psychiatrists, psychologists, and social workers.  Mr. Garcia has a treatment team that includes a treating psychiatrist, a treating psychologist, a social worker, a recreational therapist, and representatives from the medical and pharmacy departments.

While serving his civil commitment, Mr. Garcia has generally not been a disciplinary problem, although there have been sporadic incidents of sexual misconduct such as indecent exposure and one incident of assault.  He has shown little interest in therapy or mental health treatment, and in fact, has consistently denied both his mental illness and his guilt for his original crime of conviction.  He has also gone through significant periods where he has refused to comply with his medication regimen, and the medical staff has consequently resorted to administering it by involuntary injection.  Despite medication, his delusions persist — including the belief that he is or once was a U.S. Marshal; that he can predict the future; and that government staff killed or somehow stole his family from him.  He frequently refuses medication, asserts a belief that he does not require medical treatment, denies misbehavior,

and regularly threatens violent behavior, although the record demonstrates that he has rarely, if ever, followed through on his threats of violence while committed.  The Risk Assessment Panel has concluded in its evaluation each year that Mr. Garcia should remain civilly committed.

Mr. Garcia contends that his medical condition has deteriorated while serving his civil commitment at FMC Devens. Although he meets the requirements for continued civil commitment, the level of restrictions inherent in the prison setting, he contends, are not optimal for his treatment and this form of civil commitment is not necessary to protect him and others from harm.  However, attempts to transfer Mr. Garcia out of FMC Devens and into a state hospital as the locus for his commitment have proven unsuccessful.

The government has made annual requests for the state of Arizona to take custody of Mr. Garcia, and in the last few years has also made the same request of the Commonwealth of Massachusetts.  Both Arizona and Massachusetts have denied the requests.  The government's attempts at state placement have been limited to requests under the Interstate Compact on Mental Health.  *See, e.g.*, Mass. Gen. Laws ch. 123 App., § 1-1.

*Arizona* has offered a variety of reasons for denying his requests including lack of qualifying diagnosis, no suitable placement, and that the state was not accepting any transfers. *Massachusetts* denied the request on the basis that Mr. Garcia has no ties to the Commonwealth of Massachusetts.  The United States Bureau of Prisons ("BOP") contends that such requests are the only legally viable method to request that a state take custody of Mr. Garcia.  Through Ms. Kempthorne, Mr. Garcia contended that the government should be investigating other possibilities for placement as well.  In any event, it does not appear the BOP has been particularly energetic or innovative in considering the locus of Mr. Garcia's placement.

## II. CONCLUSIONS OF LAW: JURISDICTION

The threshold question before me is whether this court has jurisdiction to hear Mr. Garcia's petition at all.  He styles this action as one for a writ under 28 U.S.C. § 2241, which allows federal district courts to hear petitions for writs of habeas corpus by individuals "within [the courts'] respective jurisdictions," *id.* at § 2241(a), claiming to be held "in custody in violation of the Constitution or laws or treaties of the United States."  *Id.* at § 2241(c)(3).

8

Mr. Garcia's civil commitment clearly qualifies as
"custody" under the meaning of § 2241.  *Cf. Duncan* v. *Walker*,
533 U.S. 167, 176 (2001) ("[F]ederal habeas corpus review may be
available to challenge the legality of a state court order of
civil commitment."); *Fernos-Lopez* v. *Lopez*, 929 F.2d 20, 23 (1st
Cir. 1991) ("[A] person incarcerated for civil contempt, even in
the domestic relations context, is obviously in 'custody,' in
the traditional sense, for the purposes of invoking habeas
jurisdiction.").

However, the government argues alternatively that Mr.
Garcia should have brought his claim as almost anything other
than a petition under § 2241.  The government contends that,
given the particular relief that he seeks, Mr. Garcia must bring
this action (1) as a *Bivens* civil rights action, (2) as a
petition for habeas corpus under § 2255, or (3) as a challenge
to his civil commitment under § 4246.  The characterization of
the action has implications for venue.

The proper venue under § 2241 and a *Bivens* action[2] would be
the District of Massachusetts.  But the proper venue for a

---

[2]  It bears noting that the scope of *Bivens* actions is open to
question.  A recent opinion by Justice Kennedy for a 4-3
majority, *Zigler* v. *Abbasi*, 137 S.Ct. 1843 (2017), observed that

habeas corpus petition under § 2255 is the sentencing court, or more accurately for this case: the committing court, the Western District of Missouri. 28 U.S.C. § 2255(a) ("A prisoner in custody under sentence of a court . . . claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States . . . may move the court which imposed the sentence to vacate, set aside or correct the sentence."). Likewise, the proper venue for an action challenging civil commitment under § 4246 would also be in the Western District of Missouri. *See* 18 U.S.C. § 4247(h) ("[C]ounsel for the person or his legal guardian may . . . file with the court that ordered the commitment a motion for a hearing to determine whether the person should be discharged . . . .").

Although this court might be the proper venue for a civil

---

"expanding the *Bivens* remedy" into a new context is "disfavored." *Id.* at 1857 (quoting *Ashcroft* v. *Iqbal*, 556 U.S. 662, 675 (2009)). With the retirement of Justice Kennedy, three justices who have not weighed in on the question of the scope of *Bivens* may adopt views decisively addressing the issue. In the interim, it suffices to note that the Supreme Court has recognized a *Bivens* remedy in an analogous context to that presented here. *Carlson* v. *Green*, 446 U.S. 14 (1980) (cause of action under Eighth Amendment against prison officials for deliberate indifference to an inmate's medical needs).

rights action, Mr. Garcia contends that his claim does not sound in civil rights because it does not concern the sufficiency of any particular medical treatment, but rather more fundamentally the appropriateness of his placement at FMC Devens.  Mr. Garcia argues that he properly brings this action under § 2241 and that this court may properly assert jurisdiction because he is confined within this District.  *Rumsfeld* v. *Padilla*, 542 U.S. 426, 447 (2004) ("Whenever a § 2241 habeas petitioner seeks to challenge his present physical custody within the United States, he should name his warden as respondent and file the petition in the district of confinement.").

Thus, if Mr. Garcia's claim properly sounds in § 2241 or civil rights, venue is proper in this court.  If his claim sounds in § 2255 or § 4246, then the Western District of Missouri would be the proper venue.

## A.   *Distinguishing § 2255, § 2241, and Civil Rights Actions*

The respective boundaries of § 2255, § 2241, and civil rights actions as bases to challenge various aspects of a person's confinement blur at the edges.  As a general matter, § 2255 is the vehicle for collateral attack on the validity of the imposed sentence; § 2241 is the vehicle for challenging the

11

execution of an otherwise valid sentence; and civil rights actions - whether under *Bivens* for federal inmates or § 1983 for state inmates - are the vehicle for challenges to the particular conditions of confinement.  *See Matheny*, 307 F.3d at 711 ("A petitioner may attack the execution of his sentence through § 2241 in the district where he is incarcerated; a challenge to the validity of the sentence itself must be brought under § 2255 . . . ."); *Crooker* v. *Grondolsky*, No. 12-12106, 2013 WL 101588, at *2 (D. Mass. Jan. 4, 2013) ("Claims for inadequate medical treatment are most properly characterized as conditions of confinement claims, which are generally not cognizable under § 2241; rather most challenges to the constitutional adequacy of medical care should proceed as a civil rights action pursuant to *Bivens*.").  The language of Mr. Garcia's amended petition ranges across all three of these jurisdictional heads for prisoner litigation:  His prayer for relief seeks "conditional release," (Amended Petition at p. 5), potentially indicating a challenge to his confinement cognizable under § 2255.  He seeks "placement in the least restrictive setting appropriate to his condition," (*id*. ¶ 1), potentially indicating a challenge to the particular execution of his commitment cognizable under § 2241.  Finally,

12

he also states that he "challenges the conditions of his confinement," (*id.*), rather directly indicating a potential challenge to conditions which might be appropriate for a civil rights action.  Thus, the language used in his amended petition does not definitively establish the proper vehicle for his claim.  Ultimately, I must look to the thrust of Mr. Garcia's request, which is that he be permitted to serve his civil commitment outside a prison setting.  *Cf. Archuleta* v. *Hendrick*, 365 F.3d 644, 647 (8th Cir. 2004) (finding that petitioner's claim sounds in habeas because it primarily challenged the fact of his confinement even though he made certain claims regarding medical treatment).  Although he outlines deficiencies in the medical care he receives at FMC Devens (which might be construed as conditions of confinement), and the excessive and unnecessary level of restrictions FMC Devens places on him (which might be construed as challenging the fact of confinement), both are derivative of his claim that Devens is not the appropriate place for him to serve his civil commitment.  He does not seek court orders for better treatment or fewer restrictions in prison.  He argues that these shortcomings are evidence that FMC Devens is not a "suitable facility" for *his* commitment as required by 18

U.S.C. § 4247(a)(2).

This is not a "conditions of confinement" case that might be cognizable as a civil rights action because Mr. Garcia does not seek to improve his treatment in prison.  Rather, he seeks to serve his commitment outside the prison setting.  The First Circuit has held that a petitioner could proceed by habeas corpus rather than through a "conditions of confinement" case when he sought to reinstate a work release program after his warden revoked it and returned him to standard prison confinement.  *Brennan* v. *Cunningham*, 813 F.2d 1, 4 (1st Cir. 1987).  As with the petitioner in *Brennan*, Mr. Garcia outlines the unnecessary nature of the restrictive conditions he faces in prison as evidence that the prison setting itself is inappropriate, not in order to seek some specific remedy tailored to the particular conditions of his confinement.  Thus, his claim sounds in habeas rather than civil rights.  *Id.; see also Boudin* v. *Thomas*, 732 F.2d 1107, 1111 (2d Cir. 1984) (collecting cases) ("[H]abeas is the appropriate action to challenge conditions of confinement where the prisoner seeks to be moved in order to remedy past constitutional violations.").  Habeas cases are not limited to those persons seeking complete

freedom from confinement.  Requests to change the level of
restrictions or the form of confinement may also sound in
habeas.  *See Graham* v. *Broglin*, 922 F.2d 379, 381 (7th Cir.
1991) ("[I]f a prisoner claims to be entitled to probation or
bond or parole, his proper route is habeas corpus, even though
he is seeking something less than complete freedom.") (citing
*Maleng* v. *Cook*, 490 U.S. 488 (1989)).

The distinction between challenging the fact or duration of
a sentence under § 2255 and challenging the execution of a
sentence under § 2241 is a fine one, especially where the remedy
the petition seeks is transfer to another location or type of
confinement.  While some courts have stated that requests to
transfer to a new location are appropriate under § 2241, *see*
*Jiminian* v. *Nash*, 245 F.3d 144, 146 (2d Cir. 2001) ("A motion
pursuant to § 2241 generally challenges the *execution* of a
federal prisoner's sentence, including . . . prison transfers
[and] type of detention . . . .") (emphasis in original);
*Hernandez* v. *Campbell*, 204 F.3d 861, 864 (9th Cir. 2000)
("[P]etitions that challenge the manner, location, or conditions
of a sentence's execution must be brought pursuant to § 2241 . .
. ."), other courts have held that a request for a change in

15

location may amount to a challenge to the fact or duration of confinement if the result of the transfer is eligibility for early release, such as in a work release program, *see, e.g., Brennan*, 813 F.2d at 4-5; *see also Graham*, 922 F.2d at 381.

Mr. Garcia's petition falls well outside the ambit of *Brennan* because the transfer he seeks (to civil commitment in a facility other than a federal medical prison center) will have no immediately foreseeable effect on the duration of his confinement.  Unlike a work release program which is designed to shorten the term of confinement, transfer to a non-penal setting to serve civil confinement implicates neither the validity of the commitment nor its duration.  Transfer simply seeks to place him in a more appropriate facility to serve the full time required by a valid commitment order.  Any effect on the duration of the commitment as a result of mental health improvement is incidental.

In an attempt to reconcile existing case law distinguishing habeas petitions seeking a change in location from civil rights claims, the Seventh Circuit has suggested that habeas corpus applies where "the prisoner is seeking what can fairly be described as a quantum change in the level of custody - whether

16

outright freedom . . . or the run of the prison in contrast to
the approximation to solitary confinement that is disciplinary
segregation." *Graham*, 922 F.2d at 381.  By contrast, a civil
rights action is appropriate if "he is seeking a different
program or location or environment . . . even if, as will
usually be the case, the program or location or environment that
he is challenging is more restrictive than the alternative that
he seeks." *Id*.

The First Circuit applied the *Graham* framework in *Gonzalez-
Fuentes* v. *Molina*, 607 F.3d 864, 873-74 (1st Cir. 2010).  It
essentially held that if a petitioner seeks a change in location
for the sake of change in location, the action challenges
conditions, but if he seeks a categorical change in the level of
confinement - whether or not associated with a change in
location - the claim may sound in habeas.  *See id*.  In this
case, Mr. Garcia argues that the restrictions the prison places
on him are inappropriate and, in fact, detrimental to his
health.  He does not simply seek transfer for the sake of a new
location or to improve his particular conditions, but rather to
change his level of confinement fundamentally from prison to a
hospital facility.  Thus, his petition seeks a transfer as a

"quantum change in the level of custody" challenging the
execution of the sentence, not the validity of the commitment or
its duration.[3]   I conclude his claim sounds in habeas under
§ 2241.

**B.   *Transfer as Challenge to Execution of the Commitment Order***

The government contends that because Petitioner seeks
transfer to a less-restrictive setting, this action is
essentially a collateral attack on his civil commitment.   From
this overbroad characterization, the government draws two
erroneous conclusions: (1) that habeas corpus under § 2241
should not be available because Mr. Garcia has alternative
avenues for relief, and (2) that this petition belongs in the
Western District of Missouri because it essentially seeks to
challenge the validity of the civil commitment as provided by §
4246.

The flaw in Respondent's first conclusion is clear from the
face of the civil commitment statute itself.   To be sure,
"habeas corpus is an extraordinary remedy typically available

---

[3] I note that the First Circuit since handing down *Gonzalez-Fuentes* has suggested that something more relaxed than the
"quantum-leap" standard is sufficient.   *See, e.g., Francis* v.
*Maloney*, 798 F.3d 33, 36 (1st Cir. 2015) (§ 2241 may be invoked
"to contest one's imprisonment in a specific facility").

only when the petitioner has no other remedy," *Archuleta*, 365
F.3d at 648; *accord Timms* v. *Johns*, 627 F.3d 525, 531 (4th Cir.
2010), but this is not such a "typical" case.  The civil
commitment statute specifically preserves a patient's right to
challenge his detention in habeas.  In fact, under a section
titled "Habeas corpus unimpaired," the civil commitment statute
states "Nothing contained in section . . . 4246 . . . precludes
a person who is committed under . . . such section[] from
establishing by writ of habeas corpus the illegality of his
detention."  18 U.S.C. § 4247(g).

When a patient seeks precisely what § 4247(h) provides -
discharge from civil commitment - the proper venue would
presumptively be the committing court.  *Archuleta*, 365 F.3d at
649.  But where he attacks the manner of execution of his
commitment without challenging the validity of his continued
confinement, his claim properly sounds in habeas and he may
bring a claim against his warden in the district of his
confinement.  The fact that Mr. Garcia could challenge the
validity of his commitment through § 4247(h) does not constitute
an alternative avenue of relief when he does not seek to have
his commitment declared invalid and then to be discharged, but

rather seeks alternative placement to serve his valid commitment.   There is no reason to require Mr. Garcia to forego the more narrow relief he seeks simply because an alternative avenue exists through which he could request more fundamental relief.   Thus, the avenue for discharge provided in § 4247(h) does not bar Mr. Garcia's petition for the habeas relief he seeks in this case.

The government's second conclusion is similarly flawed. The government is correct that the proper venue for a challenge to a civil commitment is the committing court, *Pledger* v. *Anderson*, 416 F. App'x 580, 581 (8th Cir. 2011), but this refers to challenges to the validity of the commitment itself, not the particular execution.   At the risk of reciting a tautology, a commitment order is an order of the committing court.   A court has inherent authority to construe, interpret, and enforce (or vacate) its own orders.   Thus, a petitioner must bring a challenge to the validity of the commitment order before the court that issued it.   *Pledger*, 416 F. App'x at 580-81. However, unlike in *Pledger*, Mr. Garcia does not challenge the validity of his commitment as issued by the committing court. He challenges the execution of the commitment as implemented by

20

the warden overseeing his confinement.  Just as it is vital that
a court have authority to construe its own orders, so too is it
vital that courts exercise jurisdiction in habeas corpus over
prisoners and civilly committed patients confined within their
district when the wardens' execution of their sentences is put
in issue.  Mr. Garcia does not challenge that aspect of his
commitment related to the committing court - the order itself.
He challenges the aspect of his commitment related to this
district — the manner in which the BOP has chosen to carry out
his commitment.  Such a challenge properly belongs before a
court in the district of his confinement as a petition for
habeas corpus.

## C.  *Conclusion*

This case falls within the narrow range of civil commitment
disputes subject to adjudication under § 2241 by the court in
the district of confinement.  It does not challenge the validity
of the civil commitment, for which the appropriate venue would
be the committing court under either § 2255 or § 4247(h).  It
also does not simply challenge the conditions of confinement,
which is the office of a civil rights action under *Bivens* or
§ 1983.  Rather, Mr. Garcia challenges the particular execution

21

of the commitment that the Western District of Missouri validly imposed and seeks a categorical change in the location of commitment.  Such an action belongs in this court as the district of his confinement.

### III. DISCUSSION

Absent the assumption of responsibility by either a state in which a patient is domiciled, or in which he was tried, the BOP must itself "hospitalize the person for treatment in a suitable facility."  18 U.S.C. § 4246(d).[4]  A Federal Medical Center, such as FMC Devens, where Mr. Garcia is now housed, can be a "suitable facility" as required for civilly committed patients.  18 U.S.C. § 4247(a)(2).  A prison medical facility may be suitable despite Petitioner's complaint that he is "treated as if he were a convicted prisoner rather than a civil committee or patient."  *Phelps* v. *U.S. Bureau of Prisons*, 62 F.3d 1020, 1022-23 (8th Cir. 1995).  Consequently, Mr. Garcia's argument that the very fact he is incarcerated in a prison

---

[4] Although the civil commitment statute imposes obligations on the Attorney General as the responsible party, the Director of the BOP has by regulation been designated responsible for implementation of 18 U.S.C. §§ 4246 and 4247.  28 C.F.R. § 0.96(j).  Consequently, in this Memorandum and Order, I will refer to the BOP as the responsible agency for implementation.

facility and that the guards treat him like other prisoners in terms of restrictions on his freedoms, standing alone, cannot justify his petition on the basis that FMC Devens is not a "suitable facility."

I continue to find FMC Devens a suitable facility as a general proposition.  It is a long-term psychiatric hospital setting, albeit within the context of a prison.  It employs a full-time staff of psychiatrists, psychologists and social workers specializing in mental health treatment, and Mr. Garcia has a qualified team assigned to attend to his mental health and treatment who meet quarterly to discuss his progress.  It is equipped to address Mr. Garcia's mental health medical needs and sex offender treatment related to his offense.  His confinement is not categorically restrictive in light of his requirements. The N-building, where Mr. Garcia lives, is a step-down program in which the restrictions range from N-1, which is essentially solitary confinement, to N-4 and N-5, in which Mr. Garcia has full daytime access to FMC Devens facilities.  This includes medical and mental health support such as support groups and sex offender treatment as well as recreational activities such as TV, the library, religious services, and the dining hall.  On

good behavior, Mr. Garcia can step down to the less restrictive
stages of confinement.  Mr. Garcia argues that FMC Devens is not
a step-down facility because there is no option to be released
on good behavior, but this proves too much.  If Mr. Garcia were
transferred to a state hospital to serve his civil commitment,
his release would depend on whether he would be a danger to
himself or others - the same standard governing the potential
for his release from Devens.

But the BOP does not fully satisfy its statutory
obligations by housing Mr. Garcia in a suitable federal
facility.  The BOP is also under a statutory obligation to "make
all reasonable efforts to cause a state to assume [control over
the committed person]," 18 U.S.C. § 4248(d), as Mr. Garcia
requests.

To be sure, it is questionable whether the BOP, or this
court has the power to compel a state to accept responsibility
for Mr. Garcia.  *See* 18 U.S.C. § 4248(d) (providing for
alternatives if a state will not accept responsibility for a
civil committee); *United States* v. *Stanford*, 769 F. Supp. 2d
1083, 1090-91 (N.D. Tex. 2011) (finding that the court must
commit a civilly committed patient to the custody of the

24

Attorney General and does not have the power to order a particular placement itself); *United States* v. *Auberg*, No. 01-0216M-01, 2001 WL 987802, at *4 (S.D. Ind. July 9, 2001) (same).

However, I am not persuaded that the BOP has made "all reasonable efforts" to place Mr. Garcia in a state facility.  I recognize that the social workers at FMC Devens have made annual requests to obtain state hospital placement for Mr. Garcia in Arizona - Mr. Garcia's original home state and the state in which his criminal trial took place - since 2002, but Arizona has denied each request for various reasons including lack of a qualifying diagnosis.  The BOP has not contested further Arizona's position that the state simply would accept no transfers.

Although Mr. Garcia has no relationship with Massachusetts other than his confinement since 2004 at FMC Devens, his social worker has also requested transfer to a Massachusetts hospital, presumably because Massachusetts at this point is effectively Mr. Garcia's domicile.  This was also denied and again the BOP has not contested further the position Massachusetts has taken.

I am not persuaded at this point that repetitive and rote requests are all that is reasonable under the circumstances.  I

25

will permit further record development to provide a foundation for determining whether they are.

Moreover, the BOP's near-contumacious refusal to provide a meaningful explanation why it has apparently made no effort to pursue two additional alternatives outlined in § 4247(i): (A) ". . . contract[ing] with a State, political subdivision, locality or a private agency for the confinement, hospitalization, care or treatment, or in the provision of services to, a person committed . . . [or] (B) . . . apply[ing] for the civil commitment, pursuant to State law of a person committed to [BOP] custody pursuant to section . . . 4246 . . . " requires further inquiry.  The BOP's twice-repeated answer is that it is not required by statute to do so, but it does not explain, as my inquiry plainly required, its position why it has not chosen to do so.

Under these circumstances, further record development may be necessary to determine whether the BOP's inexplicable refusal even to explore these alternatives is in contravention of its statutory directive to use "all reasonable efforts to cause . . . a state to assume control" of Mr. Garcia's commitment.

26

**IV. CONCLUSION**

For the foregoing reasons, I DENY Respondent's motion [Dkt.

No. 69] to dismiss or to change venue regarding the First

Amended Petition for Writ of Habeas Corpus.


                              */s/ Douglas P. Woodlock*_____
                              DOUGLAS P. WOODLOCK
                              UNITED STATES DISTRICT JUDGE

27